IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MASTEC INC.,**
**Employer Below, Petitioner**

**v.)  No. 25-ICA-344**          (JCN: 2024024952)

**BRETT BLACKWELL,**
**Claimant Below, Respondent**

**and**

**MASTEC INC.,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-406**          (JCN: 2024024952)

**BRETT BLACKWELL,**
**Claimant Below, Respondent**

### MEMORANDUM DECISION

In these consolidated appeals, Petitioner Mastec, Inc. ("Mastec") appeals the August 25, 2025, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order and granted the request to add adhesive capsulitis and subacromial impingement as compensable conditions in the claim. Mastec also appeals the Board's October 1, 2025, order, which reversed the claim administrator's order and granted temporary total disability ("TTD") benefits from September 21, 2024, through March 12, 2025. In both cases, respondent Brett Blackwell timely filed a response, and Mastec filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Mastec is represented by Tracey B. Eberling, Esq. Mr. Blackwell is represented by William B. Gerwig III, Esq.

Prior to the compensable injury in this claim, Mr. Blackwell was treated by Robert Johnston, M.D., on August 8, 2022. Mr. Blackwell reported bilateral shoulder pain of over two months, and sharp rib to chest pain. On August 9, 2022, Mr. Blackwell underwent an x-ray of his bilateral shoulders, which revealed mild acromioclavicular (AC) degeneration bilaterally. Mr. Blackwell followed up with Dr. Johnston on April 1, 2024, regarding his bilateral shoulder pain. Dr. Johnston's assessment included an anterior to posterior tear of the superior glenoid labrum of the right shoulder.

On July 11, 2024, Matthew Stover, D.O., an orthopedic surgeon, saw Mr. Blackwell, who reported bilateral shoulder pain, primarily in the right shoulder. Dr. Stover noted that Mr. Blackwell had pain and loss of motion in his right shoulder for many months, and his symptoms were progressively worsening despite six weeks of conservative care, including physical therapy and injections. An MRI of the right shoulder revealed thickening around the rotator interval consistent with adhesive capsulitis, mild partial thickness fraying of the rotator cuff, and AC joint arthritis with impingement. Physical examination of both shoulders revealed mild tenderness to palpation, painful and decreased range of motion, and weakness secondary to pain. Dr. Stover assessed adhesive capsulitis of the right shoulder, shoulder impingement of the right shoulder, and left shoulder pain.

Turning to the compensable injury in this claim, Katie Winner, PA, treated Mr. Blackwell at the Emergency Department of WVU Medicine Summersville Regional Medical Center on August 2, 2024. PA Winner noted that Mr. Blackwell was involved in an excavator rollover accident while at work. Mr. Blackwell reported that he was in an enclosed excavator that rolled on its right side, and that he lifted his right arm to protect his head and sustained a right arm laceration. Further, Mr. Blackwell stated that he hit his left shoulder on the left-side window and the glass was broken. The diagnosis was laceration of the right upper extremity, acute pain in the left shoulder, and right rib contusion. Also, on the date of the injury, an Employee Injury Report was completed by the employer. Mr. Blackwell was using an excavator when he was injured. The report indicated that Mr. Blackwell injured multiple body parts.

On August 6, 2024, Mr. Blackwell presented to MedExpress with pain in the left shoulder and muscle spasms throughout his arm. Benajamin Cook, M.D., diagnosed a laceration of the right forearm and a sprain of the ligament of the left shoulder joint. Mr. Blackwell completed an Employees' and Physicians' Report of Occupational Injury form, also dated August 6, 2024. Mr. Blackwell indicated that he injured his left shoulder, right arm, right side, and ribs, and he had a knot on his head when his excavator rolled over while he operated it at work. The physicians' portion of the form was completed by medical personnel at MedExpress Urgent Care. The injury was described as a heavy machinery accident. The body parts injured were listed as a laceration and shoulder injury as a result of an occupational injury. Mr. Blackwell followed up with MedExpress on August 11, 2024. Sharon McMillin, NP, reported that the sutures were removed. NP McMillin

completed a Workers' Compensation Duty form, placing Mr. Blackwell on modified duty with zero hours of pushing/pulling, reaching, fine manipulation, and overhead reach.

On August 14, 2024, the claim administrator held the claim compensable for sprain of ligaments of the left shoulder joint and laceration without foreign body of the right forearm. On August 16, 2024, Mr. Blackwell underwent an MRI of the left shoulder, which revealed an undersurface tear of the supraspinatus tendon and AC degenerative joint disease. Mr. Blackwell followed up at MedExpress regarding his left shoulder pain on August 20, 2024. Shawn Willis, NP, assessed a sprain of the ligament of the left shoulder joint.

In correspondence to the claim administrator dated August 26, 2024, Tina Conrad, NP, stated that because Mr. Blackwell was scheduled for a right shoulder rotator cuff repair the next month, and he started to have pain in the left shoulder, Dr. Stover ordered a left shoulder MRI. NP Conrad noted that Mr. Blackwell said his shoulder hurt much worse than it did before the excavator turned over with him in it.

On September 18, 2024, Anthony Collias, D.C., saw Mr. Blackwell, who presented with complaints of pain in his upper mid/back area, bilateral shoulders, and the back of his head. Mr. Blackwell's shoulder pain radiated into his elbows, and Dr. Collias noted that orthopedics had diagnosed adhesive capsulitis. Physical examination revealed pain and severely decreased range of motion in the left shoulder. Dr. Collias diagnosed segmental and somatic dysfunction of the cervical region, myositis, and adhesive capsulitis of unspecified shoulder.

On September 25, 2024, Jared Hollinger, M.D., at Cabell Huntington Hospital, saw Mr. Blackwell, regarding his continual left shoulder pain and restricted range of motion following a work-related accident. Mr. Blackwell underwent an EMG/NCS of the upper extremities on September 25, 2024, which revealed a chronic left C6 radiculopathy, median neuropathy at the left wrist consistent with mild left carpal tunnel syndrome and superimposed sensorimotor polyneuropathy. An MRI of Mr. Blackwell's cervical spine performed on September 26, 2024, revealed multilevel degenerative disc disease. There was no significant spinal or foraminal stenosis, and the spinal cord was normal in signal and caliber.

Mr. Blackwell was seen by Chad Lavender, M.D., on October 10, 2024, and reported persistent left shoulder pain with stiffness and numbness in the upper extremity following an excavator injury at work. Dr. Lavender assessed left shoulder adhesive capsulitis, multilevel cervical spine degenerative changes, left cubital tunnel, and possible left pronator syndrome. Regarding the left shoulder adhesive capsulitis, Dr. Lavender stated, "We did discuss that his adhesive capsulitis may be possibly related to his work injury given his lack of wanting to move the shoulder, which can cause him to have adhesive capsulitis."

By correspondence to the claim administrator dated December 12, 2024, counsel for Mr. Blackwell requested that TTD benefits be extended at least through March 12, 2025. Also on December 12, 2024, Dr. Stover completed an Attending Physician Benefits Form and indicated that Mr. Blackwell had not yet reached maximum medical improvement ("MMI") for the compensable injuries. Dr. Stover estimated that Mr. Blackwell was temporarily and totally disabled from August 2, 2024, to an estimated date of March 12, 2025. By order dated December 13, 2024, the claim administrator denied TTD benefits from September 21, 2024, through March 12, 2025. Mr. Blackwell protested this order to the Board. On December 19, 2024, Dr. Stover completed a Diagnosis Update form, requesting that left shoulder adhesive capsulitis, subacromial impingement, and rotator cuff tear be accepted as compensable conditions in the claim.

On January 28, 2025, Dr. Stover saw Mr. Blackwell for a follow-up regarding his right shoulder. Mr. Blackwell was approximately four months out from right shoulder arthroscopy with lysis of adhesions and biceps tenodesis. Dr. Stover assessed adhesive capsulitis of the right shoulder and subacromial impingement of the right shoulder. On February 10, 2025, Dr. Stover performed a left shoulder arthroscopy with extensive debridement, subacromial decompression, and arthroscopic biceps tenodesis. The operative findings included a tear of the labrum biceps junction, extensive scar tissue throughout the glenohumeral joint and subacromial space, fraying of the rotator cuff but no full tear, a type 2 acromion with a large anterolateral spur, and subacromial bursitis. Dr. Stover diagnosed a biceps tendon tear and labral junction of the left shoulder and subacromial impingement of the left shoulder.

On February 10, 2025, Dr. Stover performed a right shoulder arthroscopy with extensive debridement, subacromial decompression, arthroscopic lysis of adhesions, arthroscopic biceps tenodesis, and arthroscopic AC joint resection for the diagnosis of right shoulder adhesive capsulitis, labral tear, impingement, and arthritis.

By order dated March 20, 2025, the claim administrator denied Dr. Stover's request to add left shoulder adhesive capsulitis, subacromial impingement, and left shoulder rotator cuff tear as compensable conditions in the claim. Mr. Blackwell protested this order to the Board.

By order dated August 25, 2025, the Board affirmed the claim administrator's order insofar as it denied the request to add left shoulder rotator cuff tear as a compensable condition in the claim, and reversed, in part, the claim administrator's order insofar as it denied the request to add left shoulder adhesive capsulitis and subacromial impingement as compensable diagnoses in the claim.[2] The Board found Mr. Blackwell established by a

---

[2] This appeal is limited to the portion of the Board's order that reversed the claim administrator's order and granted the request to add left shoulder adhesive capsulitis and subacromial impingement as compensable diagnoses in the claim.

preponderance of the evidence that the diagnoses of left shoulder adhesive capsulitis and subacromial impingement are causally related to the compensable injury.

By order dated October 1, 2025, the Board reversed the claim administrator's December 13, 2024, order and granted Mr. Blackwell TTD benefits from September 21, 2024, through March 12, 2025. The Board found that the weight of the evidence establishes that Mr. Blackwell was temporarily and totally disabled from September 21, 2024, to March 12, 2025. Mastec now appeals the Board's August 25, 2025, and October 1, 2025, orders.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mastec asserts one assignment of error in each appeal. In the case related to the request to add adhesive capsulitis and subacromial impingement as compensable conditions in the claim, Mastec argues that the Board's decision is based on the erroneous conclusion that because Mr. Blackwell had not been diagnosed with adhesive capsulitis or subacromial impingement before the accident, these conditions resulted from the workplace accident. In the case regarding TTD benefits, Mastec asserts that the Board erred in reversing the claim administrator's order because the evidence establishes that Mr. Blackwell was unable to work from September 27, 2024, through February 10, 2025, due to a previous unrelated right shoulder surgery performed by Dr. Stover. We disagree with both arguments.

Three elements must coexist in compensability cases: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r,* 153 W. Va. 796, 172 S.E.2d 698 (1970).

In Syl. Pt. 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), the Supreme Court of Appeals of West Virginia held as follows:

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable injury results in a [discrete] new injury, that new injury may be found compensable.

The Supreme Court of Appeals of West Virginia clarified its position in Syl. Pt. 5 of *Moore v. ICG Tygart Valley*, LLC, 247 W. Va. 292, 879 S.E.2d 779 (2022), and stated that:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continually manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Here, the Board analyzed Mr. Blackwell's claim pursuant to *Gill* and *Moore* and concluded that the preponderance of the evidence shows that the diagnoses of left shoulder adhesive capsulitis and subacromial impingement are causally related to the compensable injury of August 2, 2024. Both Dr. Lavender and Dr. Stover diagnosed left shoulder adhesive capsulitis following the compensable injury. Dr. Lavender stated that the left shoulder adhesive capsulitis was possibly related to the compensable injury, and Dr. Stover completed the Diagnosis Update form requesting that left shoulder adhesive capsulitis and impingement syndrome be added to the claim as compensable. The Board noted that although Dr. Stover diagnosed adhesive capsulitis of the right shoulder previously, he did not make a diagnosis of left shoulder adhesive capsulitis or subacromial impingement until after the compensable injury. The Board found that Dr. Stover's findings and conclusions are persuasive and reliable. Further, the Board found that there was no medical evidence of record to support a finding that Mr. Blackwell's left shoulder adhesive capsulitis and subacromial impingement predated the compensable injury.

6

Turning to the appeal involving TTD benefits, the Board concluded that Mr. Blackwell was entitled to TTD benefits from September 21, 2024, through March 12, 2025, based on Dr. Stover's findings. West Virginia Code § 23-4-1c (2009) provides for payment of TTD benefits during the healing and recovery period. Further, West Virginia Code § 23-4-7a (2005) provides that TTD benefits are not available once a claimant reaches MMI, returns to work, or is released to return to work. Here, the Board found that there was no medical evidence establishing that Mr. Blackwell was released to return to work or reached MMI prior to March 12, 2025. Further, the Board concluded that Dr. Stover's finding that Mr. Blackwell was unable to work because of his compensable injury from September 21, 2024, through March 12, 2025, was persuasive.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in granting the request to add left shoulder adhesive capsulitis and subacromial impingement as compensable conditions in the claim. Further, we cannot conclude that the Board was clearly wrong in granting Mr. Blackwell TTD benefits from September 21, 2024, through March 12, 2025.

Accordingly, we affirm the Board's August 25, 2025, and October 1, 2025, orders.

Affirmed.

**ISSUED:** April 7, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

7